The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff alleges an injury by occupational disease.
4. Plaintiff's average weekly wage at the time of the alleged injury was $923.73.
5. At the time of the alleged injury by occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer/employee relationship between the parties with Kelly Springfield being insured by The Travelers Insurance Co.
 ***********
Based upon the competent and credible evidence and the reasonable inferences therefrom, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. Plaintiff was born on February 17, 1940. He has received his high school diploma and taken some college courses. Plaintiff was employed by employer as a banbury operator for approximately 27 years.
2. His average weekly wage was $923.73, which yields a weekly compensation rate of $492.00, the maximum compensation rate for 1996.
3. As a banbury operator, plaintiff was required to pour chemicals into a plastic bag and then pour this mixture into a machine to be made into a batch of rubber. Usually plaintiff would make production rubber, which required him to push a button to release rubber pellets into his machine. In fact, evidence from a systems auditor with Kelly Springfield reveals that 85% of the time, plaintiff only had to run pellets by pushing a button. This work was not repetitive to the extent that would cause problems with plaintiff's hands. Occasionally, plaintiff would use a knife to cut small pieces of rubber. On average, plaintiff's machine production would range from approximately 238 to 250 batches a day. Plaintiff alleges that he developed bilateral carpal tunnel syndrome caused by his occupation on or about November 1996.
4. In addition to his alleged carpal tunnel syndrome, plaintiff has numerous other health problems, including coronary artery disease, diabetes, high cholesterol, and memory loss.
5. Plaintiff first complained of wrist pain and chest discomfort to his family physician, Dr. Clayton. During his treatment of plaintiff, Dr. Clayton noted some subjective weakness in his hands but did not diagnose carpal tunnel syndrome or any neuropathy involving his hands. Dr. Clayton referred plaintiff to Dr. Van Tran for nerve studies on June 30, 1997. Based on these studies, plaintiff was diagnosed with moderately severe bilateral carpal tunnel syndrome.
6. Plaintiff was also referred by Dr. Clayton to Dr. Patel, a cardiologist, on June 27, 1997 for complaints of chest pain. Dr. Patel completed disability forms indicating that plaintiff was disabled from work as of June 27, 1997. Plaintiff was kept out of work in order to complete extensive testing and Dr. Patel released him to return to work on July 15, 1997. On October 7, 1997, Dr. Clayton indicated that plaintiff was unable to work at all because of memory loss and chest pain.
7. Plaintiff was also treated by Dr. Powell, a family physician. He was initially seen on March 18, 1999 with complaints of gastrointestinal difficulties. Plaintiff first complained of weakness in his hands to Dr. Powell on August 26, 1999. Dr. Powell has not conducted any diagnostic testing for plaintiff's alleged carpal tunnel syndrome and has only provided medication based on plaintiff's subjective symptoms.
8. Plaintiff has received the majority of his treatment for bilateral carpal tunnel syndrome from Dr. Clark. Dr. Clark initially recommended conservative treatment with wrist splints, but ultimately performed surgery. Dr. Clark performed a right carpal tunnel release on October 3, 1997 and a left carpal tunnel release was done on December 8, 1997. Plaintiff did not experience any difficulties after his surgery and as of his last visit on March 17, 1998, plaintiff had no complaints. Plaintiff was released without any restrictions and Dr. Clark's records indicate that plaintiff is not disabled as a result of his carpal tunnel syndrome. Dr. Louis P. Clark is Board Certified in Orthopaedics and also has a certification in hand surgery. Dr. Clark indicated that in his opinion, contained in medical records designated as Defendant's Exhibit No. 1 and attached to his deposition testimony, plaintiff's problems with his hands did not arise out of plaintiff's employment and the Full Commission so finds. Due to Dr. Clark's experience and actual treatment of plaintiff's bilateral carpel tunnel syndrome, greater weight is given to his testimony than the testimony of other doctors in this case.
9. Plaintiff's account of his job duties is not credible given his documented memory loss and credible evidence to the contrary including but not limited to the testimony of Charles McDonald, a systems auditor with Kelly Springfield.
10. Steve Carpenter, plaintiff's vocational expert, testified that plaintiff's job was repetitive. His opinion is not credible, however, because it is based on an incorrect description of the job provided by plaintiff. Plaintiff reported that he produced one batch of rubber in 30 seconds, when, in fact, production records show that it was much slower. In fact, on a record day, plaintiff received an award for averaging one batch in approximately 60 seconds. When presented with accurate facts, Mr. Carpenter had no opinion regarding whether the job was repetitive.
11. Dr. Clark has been plaintiff's primary treating physician for his carpal tunnel syndrome and his records indicate that plaintiff's condition is not related to his employment. This opinion is accepted as credible as opposed to those of Drs. Clayton and Powell. Neither physician has performed diagnostic testing and Dr. Clayton is unable to exclude plaintiff's diabetes-related peripheral neuropathy as the cause of his hand weakness. These doctors also have not treated plaintiff extensively for carpal tunnel syndrome and likewise base their opinions on plaintiff's inaccurate and unreliable report of his job duties.
 ***********
Based upon the foregoing, the Full Commission makes the following:
 CONCLUSION OF LAW
Plaintiff has failed to prove that he has contracted an occupational disease caused by and related to conditions characteristic of and peculiar to plaintiff's employment with Kelly Springfield. N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the Workers' Compensation Act is, and under the law must be, DENIED.
2. Each side shall pay its own costs, except the defendants shall pay an expert witness fee of $200.00 to Dr. Eric Clayton, $235.00 to Dr. Divyang R. Patel, $400.00 to Dr. Eddie Powell, $300.00 to Dr. Louis P. Clark and $175.00 to Steve Carpenter.
This 16th day of November 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER